## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOSETTE OLIVER, | ) | |
| KEONA MONTGOMERY, and | ) | |
| TARYN TRAVIS, on behalf of | ) | |
| themselves and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-3786 |
| | ) | |
| CHICAGO HOUSING AUTHORITY, | ) | |
| an Illinois municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

## INTRODUCTION

1. Plaintiffs and the class they seek to represent live in public housing units owned or controlled by the defendant, the Chicago Housing Authority ("CHA").

2. CHA was created to help address the acute shortage of decent and safe dwellings for low-income families.

3. CHA is authorized to charge a minimum monthly rent of $75, but if a family is experiencing "financial hardship," the family may be entitled to an exemption from the minimum rent requirement.

4. Plaintiffs bring this suit under 42 U.S.C. § 1983 to challenge CHA's alleged practice of (1) refusing to consider or grant a hardship exemption, even when CHA knows a family has no income, unless and until the family

formally requests such an exemption, and (2) failing to adequately notify tenants of the availability of, and process for, requesting a hardship exemption.

5. CHA's policies apply to all residents living in public housing units owned or controlled by CHA.

6. CHA's policies have deprived eligible families of financial hardship exemptions and resulted in a financial benefit for the agency.

7. As a result of its policies, CHA has charged or collected from its residents minimum rent payments to which CHA was not entitled. CHA's pursuit and collection of unpaid rent to which it was not entitled has caused severe financial strain, stress, and undue hardship for CHA residents.

8. Plaintiffs seek to impose liability against CHA and also seek injunctive relief to change CHA's policies.

## BACKGROUND

### The Federally-Funded Public Housing Program in Chicago

9. CHA administers the federally-funded public housing program in Chicago.

10. Pursuant to the federal law governing this program, residents of CHA public housing pay a reduced rent typically equal to 30% of their adjusted monthly household income, 10% of their unadjusted monthly household income, or a standard minimum rental amount, whichever is higher. *See* 42 U.S.C. § 1437a(a).

2

11. The CHA minimum rent applies to only those public housing residents whose unadjusted annual income is $9,000 or less.

12. Federal law requires CHA to "immediately grant an exemption" to the minimum rent requirement when any family is unable to pay that rent because of a "financial hardship." *Id.* § 1437a(a)(3)(B)(i).

13. The law provides a nonexclusive set of situations that meet the definition of "financial hardship," including a decrease in income due to loss of employment or when a family would face eviction for nonpayment of the minimum rent. *Id.*

14. CHA created a uniform policy that applies to all residents living in CHA owned or administered buildings. This policy requires public housing residents to formally request a hardship exemption, although there is no basis for such a policy in the federal statute to which CHA must adhere.

15. CHA also fails to take steps that are reasonably calculated to ensure that tenants know about both their right to request a hardship exemption and the process for making such a request.

16. CHA has failed to comply with its statutory duty to operate a system that ensures that tenants who are entitled to a financial hardship exemption to the minimum rent requirement receive such an exemption.

17. As a result, CHA has violated and continues to violate federal law, including the United States Housing Act of 1937 ("Housing Act") and the Due Process Clause of the Fourteenth Amendment to the United States

Constitution. Accordingly, CHA has charged and collected from its public housing residents substantial rent payments to which it was not entitled.

18. Because CHA's policy exists today, the harm to Plaintiffs and the putative class is ongoing and continuing.

## PLAINTIFFS AND THE PUTATIVE CLASS

19. Plaintiffs and the putative class members are individuals who reside in public housing units owned, controlled, or operated by CHA, and who are harmed by CHA's failure to (i) comply with its statutory duty to operate a system that ensures eligible tenants receive an exemption to the minimum rent requirement, and (ii) provide tenants with adequate notice of the process for obtaining such an exemption.

20. Plaintiffs and the putative class seek prospective declaratory, injunctive, and other equitable relief that includes amendments to CHA's policies and procedures, withdrawal of pending eviction actions and associated terminations of assistance based on nonpayment of the minimum rent, recalculation of Plaintiffs' past and present rent obligations, and reimbursements or account adjustments based on those recalculations.

21. CHA's actions and policies have been applied uniformly to Plaintiffs and the putative class as a whole.

22. CHA's actions have caused or will cause Plaintiffs and putative class members imminent and irreparable injury.

23. Plaintiffs have no adequate remedy at law.

## JURISDICTION AND VENUE

24. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and under the Fourteenth Amendment to the United States Constitution. Because the matters in controversy arise under the Constitution and 42 U.S.C. § 1983, this Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367. Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 1343, 2201, and 2202 and 42 U.S.C. § 1983.

25. The events or omissions giving rise to the Plaintiffs' claims occurred in this district, so venue is proper under 28 U.S.C. § 1391(b).

## PARTIES

26. Plaintiff Josette Oliver is a resident of CHA public housing.

27. Plaintiff Keona Montgomery is a resident of CHA public housing.

28. Plaintiff Taryn Travis is a resident of CHA public housing.

29. Plaintiffs seek to represent a class of persons whose rent as CHA public housing residents is now, has been, or will be set at the federally-authorized minimum rent. Class action allegations are set forth below.

30. Defendant CHA is an Illinois municipal corporation, created and existing under the Illinois Housing Authorities Act, 310 ILCS 10/1 *et seq*.

31. CHA, a public housing agency within the meaning of 42 U.S.C. § 1437, receives federal funds to operate the public housing program and is required to operate this program in compliance with applicable federal laws.

5

## LEGAL FRAMEWORK

32. Under the Housing Act, local public housing agencies ("PHAs") receive federal financial assistance from the United States Department of Housing and Urban Development ("HUD") to provide public housing for low-income families. 42 U.S.C. § 1437 *et seq.*

33. In 1969, Congress enacted the "Brooke Amendment," which limited each public housing resident's rent payment to no more than 25% of the household's monthly adjusted income. Housing and Urban Development Act of 1969, Pub. L. No. 91-152, § 213(a), 83 Stat. 389.

34. In 1981, Congress modified the Brooke Amendment and raised public housing rent to the higher of 30% of the household's monthly adjusted income, 10% of its unadjusted monthly income, or the portion of the household's welfare assistance payment, if any, that is specifically designated for housing costs. Housing and Community Development Amendments of 1981, Pub. L. No. 97-35, § 322, 95 Stat. 400 (codified at 42 U.S.C. § 1437a(a)).

35. In 1996, Congress enacted the Moving to Work ("MTW") demonstration program to provide participating PHAs with the opportunity to design and test strategies that "increase housing choices for low-income families," reduce cost, and help public housing residents become self-sufficient. Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, § 204(a), 110 Stat 1321, 1321-281. To achieve these goals, the

MTW demonstration program allows participating PHAs to seek permission to alter their obligations under certain provisions of the Housing Act and its implementing regulations. *See id.* at 1321-281 to 1321-282.

36. Congress subsequently enacted the Quality Housing and Work Responsibility Act of 1998 ("QHWRA"). Pub. L. No. 105-276, § 501 *et seq.*, 112 Stat. 2518 *et seq.*

37. As relevant here, QHWRA directed PHAs to impose monthly minimum rents of no more than $50 but required that PHAs grant immediate exemptions to that minimum rent in cases of "financial hardship." *Id.*, § 507, 112 Stat. 2524-2525 (codified at 42 U.S.C. §1437a(a)(3)); *see also* 24 C.F.R. §§ 5.628(a) and 5.630(a).

38. QHWRA defines "financial hardship" to include but not be limited to situations in which: (1) the family has lost eligibility or is awaiting an eligibility determination for governmental assistance; (2) the family "would be evicted as a result of the imposition of the minimum rent requirement"; (3) the family's income has decreased because of changed circumstances; and (4) there has been a death in the family. Pub. L. No. 105-276, § 507, 112 Stat. 2525 (codified at 42 U.S.C. §1437a(a)(3)(B)(i)).

39. If a financial hardship is temporary in nature, the Housing Act requires PHAs to observe a 90-day period during which PHAs may not evict residents for nonpayment of rent. 42 U.S.C. § 1437a(a)(3)(B)(ii).

40. These requirements are codified in the Housing Act's implementing regulations. *See* 24 C.F.R. § 5.630(b)(1)(i)-(v), (b)(2).

41. CHA's public housing residential lease agreement states that "[t]he rent amount shall be determined by the CHA in compliance with United States Department of Housing and Urban Development (HUD) regulations and the CHA approved Rent Policy." Ex. A, Chicago Housing Authority, FY2020 Residential Lease Agreement at p. 5, §1, ¶ (b), https://cha-assets.s3.us-east-2.amazonaws.com/s3fs-public/2020-04/FY2020%20Residential%20Lease%20Agreement%20-%20FINAL%2020200106.pdf ("Public Housing Lease Agreement").

42. On information and belief, the CHA residential leases in the preceding 10 years are materially the same with respect to the above cited provision.

## FACTUAL ALLEGATIONS

### The Chicago Housing Authority

43. CHA is the third-largest PHA in the country.

44. On February 6, 2000, HUD authorized CHA to participate in the MTW demonstration program. U.S. Dep't of Housing and Urban Development, Chicago Housing Authority, https://www.hud.gov/program_offices/public_indian_housing/programs/ph/mtw/chicago (last updated Apr. 1, 2022).

45. The operative MTW Agreement between HUD and CHA provides, in pertinent part, as follows:

[CHA] is authorized to determine family payment, including the total tenant payment, *the minimum rent*, utility reimbursements and tenant rent. The Agency is authorized to adopt and implement any reasonable policies for setting rents in public housing including but not limited to establishing definitions of income and adjusted income, or earned income disallowance that differ from those in current statutes or regulations. The agency is authorized to adopt and implement term limits for its public housing assistance. *Such policies must include provisions for addressing hardship cases.* This authorization waives certain provisions of Section 3(a)(2), 3(a)(3)(A) and Section 6(l) of the 1937 Act and 24 C.F.R. 5.603, 5.611, 5.628, 5.630, 5.632, 5.634 and 960.255 and 966 Subpart A as necessary to implement the Agency's Annual MTW Plan.

Ex. B, Excerpt from Amended and Restated Moving to Work Agreement, 32 ("Amended MTW Agreement"), https://cha-assets.s3.us-east-2.amazonaws.com/s3fs-public/2018-08/amended_restated_mtw_agreement.pdf (emphases added, emphasis omitted).

46. Relying on its authority under the Amended MTW Agreement, CHA raised the minimum rent to $75 per month for Fiscal Year 2009. Chicago Housing Authority, FY2009 Moving to Work Annual Plan, 101 (Oct. 23, 2008), https://www.hud.gov/sites/documents/DOC_10284.pdf.

47. CHA has since maintained the minimum rent at $75.

48. In Fiscal Years 2019-2021, CHA sought to collect between $1,383,300 and $1,440,000 annually in minimum rent payments from residents in public

9

housing and residents in Component 1 of the Rental Assistance
Demonstration Project-Based Voucher program ("RAD1-PBV program").[1]

49. Even though HUD authorized CHA to increase the minimum rent to $75,
HUD required CHA to continue to obey its statutory and regulatory duty to
grant exemptions to the minimum rent in cases of "financial hardship." The
waiver does not alter CHA's obligations under 42 U.S.C. § 1437a(a)(3)(B) or
the statute's implementing regulations.

50. In response to the COVID-19 pandemic, HUD specifically recommended
that PHAs make timely rent adjustments, including minimum rent
hardship exemptions, when tenants lose their income. Ex. F, U.S. Dep't of
Housing and Urban Development, Assisting Housing Choice Voucher and
Public Housing Tenants in Reducing Accrual of Rent Owed at 1,
https://www.hud.gov/sites/dfiles/PIH/documents/PH_HCV_reducing_back_r
ent_accrual_factsheet.pdf.

51. HUD urged PHAs to "[s]pread the [w]ord" and "[e]nsure all tenants,
property management staff and service coordinators are aware of current
interim reexamination and minimum rent hardship exemption policies." *Id.*
at 2. HUD recommended that PHAs "[e]ncourage property management

---

[1] Ex. C, Excerpt from Chicago Housing Authority, FY 2019 Moving To Work Annual Report, 44 (Apr. 24, 2020), https://cha-assets.s3.us-east-2.amazonaws.com/s3fs-public/2020-05/CHA%20FY2019%20MTW%20Annual%20Report.pdf ("FY 2019 Annual Report"); Ex. D, Excerpt from Chicago Housing Authority, FY2020 Moving To Work Annual Report, 40 (Mar. 31, 2021), https://cha-assets.s3.us-east-2.amazonaws.com/s3fs-public/2021-06/CHA%20FY2020%20MTW%20Annual%20Report.pdf ("FY 2020 Annual Report"); Ex. E, Excerpt from Chicago Housing Authority, FY2021 Moving To Work Annual Report, 36 (Mar. 31, 2022), http://cha-assets.s3.us-east-2.amazonaws.com/s3fs-public/2022-05/CHA%20FY2021%20MTW%20Annual%20Report.pdf ("FY 2021 Annual Report").

staff and service coordinators to include [minimum rent hardship exemption policies] in information routinely sent to and discussed with residents, for example with rent reminder notices." *Id.* HUD also urged PHAs to proactively identify renters behind on rent and "engage in direct outreach to those families" to prevent further accrual of rent owed. *Id.*

### CHA's Uniform "Only on Request" Policy

52. CHA's policies fail to ensure that the hardship exemption is properly granted when tenants charged the minimum rent are experiencing financial hardship.

53. CHA has adopted an "only on request" policy. On information and belief, even when CHA possesses information confirming that a public housing resident is eligible for a suspension or an exemption from the minimum rent requirement because of a "financial hardship" as that term is defined in the governing statute and regulations, CHA does not grant the suspension or exemption if the resident has not requested it, despite the federal statutory requirement to "immediately grant an exemption" under these circumstances.

54. CHA does not take reasonable and adequate steps to ensure that residents are notified of the availability of hardship exemptions and CHA's "only on request" policy at times and in manners that are reasonably calculated to ensure that residents know about their right to request the exemption when they encounter financial hardship.

55. Instead, on information and belief, CHA's only provision of written information about the hardship exemption is located within dense legal documents provided to tenants at the inception of their tenancy: CHA's lease agreement and its Admissions and Continued Occupancy Policy ("ACOP").

56. The CHA public housing lease is a 34-page, single-spaced document. *See* Ex. A, Public Housing Lease Agreement.

57. Section 4(c) of the Public Housing Lease Agreement, entitled "Hardship Suspension/Exemption from the minimum rent," appears in the middle of page 8.

58. It sets forth CHA's policy as follows:

> A minimum rent hardship suspension will be granted to a resident who requests and can document, that due to a financial hardship he/she is unable to pay the minimum rent amount. If a resident paying minimum rent requests a hardship suspension, the CHA must suspend the minimum rent, effective the following month, and determine whether the resident qualifies for hardship exemption. A hardship suspension from the minimum rent does <u>not</u> mean the rent amount becomes zero (0). The family is required to pay the greater of 30% of adjusted monthly income or 10% of gross monthly income when that amount is less than the minimum rent. When appropriate, a hardship exemption will be granted considering the basis of the hardship and the amount the resident should be obligated to pay based on their income.

> Ex. A, Public Housing Lease Agreement at 8.

59. The Public Housing Lease Agreement does not explain the application or review process for a hardship suspension or exemption and does not advise tenants of any CHA-required forms to initiate this process.

12

60. The ACOP is a 104-page, single-spaced document. Ex. G, Chicago Housing Authority, FY2020 Admissions and Continued Occupancy Policy (Approved Jan. 21, 2020), https://cha-assets.s3.us-east-2.amazonaws.com/s3fs-public/2020-04/FY2020%20Admissions%20and%20Continued%20Occupancy%20Policy.pdf ("ACOP").

61. Section XI(E)(8), entitled "Minimum Rent Hardship Suspension/Exemption; 24 C.F.R. § 5.630," is on pages 78-79.

62. The ACOP provides additional detail but also sets forth CHA's policy in small, inconspicuous font. The policy reads as follows:

    a. A minimum rent hardship exemption shall be granted to residents who can document that due to a financial hardship they are unable to pay the minimum rent. Examples of financial hardship for which a family would qualify for an exemption of minimum rent include, but are not limited to:

        i. The family has lost eligibility for or is applying for an eligibility determination for a federal, state, or local program;

        ii. The family would be evicted as a result of being unable to pay the minimum rent;

        iii. The income of the family has decreased because of changed circumstances, including loss of employment; or

        iv. A death occurred in the family.

    b. If a family paying minimum rent requests a hardship exemption, the CHA must suspend the minimum rent, effective the following month. The CHA may not evict the family for non-payment of the minimum rent for 90 calendar days following the request for the hardship exemption.

    c. The suspension of minimum rent continues until the CHA determines whether or not the hardship is short-term (lasting less than 90 calendar days) or long term (lasting 90 calendar days or more).

    d. If the CHA determines that a qualifying hardship is temporary, the CHA will not impose the minimum rent during the 90-day period beginning the month following the date of the family's request for a hardship exemption. At the end of the 90-day suspension period, the

CHA will reinstate the minimum rent from the beginning of the suspension. The family will be offered a reasonable repayment agreement, on the terms and conditions established by the CHA for the amount of back rent owed by the family.

e. If the CHA determines that the qualifying financial hardship is long-term, the family will be exempt from minimum rent until the hardship ceases. The resident will not be required to repay the suspended minimum rent.

f. Exemption from minimum rent does not mean that family does not have to pay rent. The family is required to pay the greater of 30% of adjusted monthly income or 10% of gross monthly income when that amount is less than the minimum rent.

Ex. G, ACOP, at 78-79.

63. As with the Public Housing Lease Agreement, the ACOP does not explain the application or review process for a hardship suspension or exemption and does not advise tenants of any CHA-required forms. In other words, it does not adequately notify tenants of the "what," the "how," or the "when" related to financial hardship exemptions.

64. On information and belief, CHA takes no other steps to inform residents about their right to request a hardship suspension or exemption under the "only on request" policy, in writing or otherwise.

65. CHA notifies residents about their obligation to pay the monthly minimum rent of $75 by issuing written notices of rent adjustment.

66. These notices do not contain any information about the right to request a hardship exemption, even when the notice confirms that the tenant has no income. *See* Ex. H (representative form notice).

67. CHA issues notices of termination of tenancy to tenants who have failed to pay the minimum rent.

14

68. These notices do not contain any information about the right to request a hardship exemption, even though the Housing Act states that PHAs "shall immediately grant" a financial hardship exemption when "the family would be evicted as a result of the imposition of the minimum rent." 42 U.S.C. § 1437a(a)(3)(B)(i); *see also* 24 C.F.R. 5.630(b)(1)(ii); Ex. G, ACOP, at 78.

69. On information and belief, CHA deprives hundreds of families (members of the putative class) each year of hardship exemptions to which they are entitled.

70. On information and belief, CHA has maintained its "only on request" policy throughout the pandemic and has neither included information about minimum rent hardship exemptions in rent reminder notices and other information routinely sent to tenants, nor engaged in direct outreach to tenants who are behind on minimum rent to help those tenants prevent further accrual of rent owed.

**Plaintiff Josette Oliver**

71. Plaintiff Josette Oliver has been a CHA public housing resident since June 19, 2009.

72. She resides in the unit located at 10754 South Bensley Avenue, Unit 361, Chicago, Illinois.

73. As of June 2018, Ms. Oliver was performing janitorial work at a building for seniors. Her monthly rent was $900.

74. In July 2018, Ms. Oliver lost her employment and was forced to rely on her SNAP (formerly called "Food Stamps") benefits as her sole source of income.

75. Ms. Oliver received paperwork from her employer notifying her of the end of her employment, and in July 2018 Ms. Oliver brought this paperwork to an assistant property manager in the property management office. She notified the assistant property manager that she had lost her job and lost her income.

76. Ms. Oliver's ledger reflects that CHA adjusted Ms. Oliver's rent to $75 effective August of 2018.

77. On information and belief, Ms. Oliver received written notice that CHA was reducing her monthly rent to the minimum amount of $75.

78. Although CHA knew that Ms. Oliver satisfied one of the criteria for a hardship exemption because her "income ha[d] decreased because of changed circumstance, including loss of employment," CHA did not "immediately grant an exemption" from the minimum rent. *See* 42 U.S.C. § 1437a(a)(3)(B)(i).

79. On information and belief, the notice CHA sent Ms. Oliver did not inform her of her right to request a hardship suspension of or exemption to the minimum rent requirement.

80. From July 2018 until late November 2021 (when she started working part-time at Dollar General), Ms. Oliver relied solely on her SNAP benefits for income.

81. In or around March 2020, Ms. Oliver learned about her right to request a hardship exemption from an individual at a local social service agency.

82. Ms. Oliver then formally requested a hardship exemption to the minimum rent requirement.

83. CHA granted Ms. Oliver's request in April 2020, but only prospectively.

84. Between August 2018 and March 2020, CHA charged Ms. Oliver the $75 minimum rent for seventeen months, for a total of $1,275.

85. Ms. Oliver made efforts to pay down her rental debt during this period, but CHA is still holding Ms. Oliver responsible for a substantial rental debt, which includes unpaid minimum rent charges.

86. Ms. Oliver intends to maintain her tenancy in CHA public housing and must be able to rely on the minimum rent hardship exemption when she needs it, now and in the future. For the duration of her tenancy, CHA's policies and practices regarding notice and implementation of the minimum rent hardship exemption will impact her rent payments and ability to maintain her leasehold interest.

**Plaintiff Keona Montgomery**

87. Plaintiff Keona Montgomery resides with her six children in the public housing unit located at 1037 East 132nd Street, Chicago, Illinois, which is part of CHA's Altgeld Gardens development.

88. Ms. Montgomery has lived in that unit since April 18, 2011.

17

89. On information and belief, Ms. Montgomery received written notice that she would be required to pay the minimum rent of $75 per month.

90. This notice did not inform her of her right to request a hardship exemption to the minimum rent requirement.

91. Ms. Montgomery could not afford the minimum rent—she and her children survived on $250 per month in income from Ms. Montgomery's part-time job and $1,164 per month in SNAP benefits—but she did her best to pay it by borrowing the rent money from her mother.

92. While charging Ms. Montgomery the minimum rent, CHA never notified her of her right to request a hardship exemption.

93. On May 16, 2019, CHA issued Ms. Montgomery a termination notice.

94. Without contemporaneously informing Ms. Montgomery of her right to request a hardship exemption, on July 2, 2019, CHA filed an eviction action against Ms. Montgomery (*Chicago Housing Authority v. Keona Montgomery*, 19 M1 350138).

95. CHA's complaint sought possession of the premises plus approximately $900 in rent, which represented twelve months of minimum rent payments.

96. CHA was therefore seeking to evict Ms. Montgomery for nonpayment of the minimum rent.

97. In December 2019, Ms. Montgomery began employment providing culinary services at a senior citizen center. She notified her property manager of her new employment.

98. The case proceeded to trial on January 16, 2020.

99. Ms. Montgomery testified that CHA never informed her about her right to request a hardship exemption in communications about her rent prior to issuing her a termination notice.

100. CHA did not contest Ms. Montgomery's testimony on that issue. It simply confirmed that information about the hardship exemption is set forth in CHA's 34-page lease agreement and the ACOP.

101. On February 20, 2020, the trial court dismissed the eviction case on unrelated procedural grounds.

102. On March 12, 2020, CHA's property manager told Ms. Montgomery that she owed approximately $2,250, which included unpaid minimum rent charges dating back to June 2018.

103. Ms. Montgomery argued that she was entitled to a retroactive hardship exemption, but CHA disagreed.

104. Ms. Montgomery attempted to satisfy her debt by offering a partial payment of the funds CHA was demanding and arranging for a repayment plan, but CHA refused to accept the partial payment.

105. In March or April of 2020, around the start of the COVID pandemic, Ms. Montgomery lost her job. Although she reported the loss of her job to CHA,

CHA requested further documentation and continued to charge Ms. Montgomery $200 a month in rent as if she were still employed.

106. Ms. Montgomery has a substantial rental debt that includes minimum rent charges for which CHA is holding Ms. Montgomery responsible.

107. Ms. Montgomery recently began working at a café at Northwestern Law School, although she is not working during the summer months.

108. Ms. Montgomery intends to maintain her tenancy in CHA public housing (at least until she can relocate to another subsidized development) and expects that she will need to rely on the minimum rent hardship exemption when she needs it in the future. She also needs to try to repay the money she has borrowed to pay the arrears of minimum rent. For the duration of her family's tenancy, CHA's policies and practices regarding notice and implementation of the minimum rent hardship exemption will impact her family's rent payments and ability to maintain their leasehold interest.

**Plaintiff Taryn Travis**

109. Plaintiff Taryn Travis resides with her two children (ages 19 and 17) in the public housing unit located at 10512 South Yates, Unit 43, Chicago, Illinois, which is part of CHA's Trumbull Park Homes development.

110. Ms. Travis and her children have lived in that unit since July 2010.

111. Ms. Travis was financially eligible for public housing because she had no income other than SNAP benefits.

112. In or around 2018, Ms. Travis was working as a home health care aide and then as a temporary employee in the warehouse industry, and her rent was $248 per month.

113. In the summer of 2018, Ms. Travis lost her job and notified her property manager that she had lost her job and lost her income.

114. On information and belief, the property manager sent Ms. Travis written notice that her monthly rent would be reduced to the minimum amount of $75.

115. Although CHA knew that Ms. Travis satisfied one of the criteria for a hardship exemption because her "income ha[d] decreased because of changed circumstance, including loss of employment," CHA did not "immediately grant an exemption" from the minimum rent. *See* 42 U.S.C. § 1437a(a)(3)(B)(i).

116. On information and belief, the notice CHA sent to Ms. Travis did not inform Ms. Travis of her right to request a hardship exemption to the minimum rent requirement.

117. Ms. Travis, who was only receiving SNAP benefits and no cash assistance or employment-related income at the time, could not afford the minimum rent.

118. In 2020, Ms. Travis learned from a local social service provider about the right to request a hardship exemption to the minimum rent.

119. She tried to formally request such an exemption from her property manager but was told that she must continue paying the minimum rent. The property manager gave no reason for denying her request.

120. Ms. Travis has a substantial rental debt that includes minimum rent charges for which CHA is holding Ms. Travis responsible.

121. Ms. Travis intends to maintain her tenancy in CHA public housing and must be able to rely on the minimum rent hardship exemption when she needs it now and in the future. For the duration of her family's tenancy, CHA's policies and practices regarding notice and implementation of the minimum rent hardship exemption will impact her family's rent payments and ability to maintain their leasehold interest.

## CLASS ACTION ALLEGATIONS

122. Named Plaintiffs Josette Oliver, Keona Montgomery, and Taryn Travis bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure.

123. The proposed Rule 23(b)(2) and Rule 23(b)(3) class is defined as,

> "All current residents of CHA-owned, operated, or controlled public housing units, and all former residents of CHA-owned, operated, or controlled public housing units who resided in those units at any point since July 13, 2016, whose rent is now, has been, or will be set at the federally-authorized minimum rent."

124. **Numerosity**. The class is so numerous that joinder of all its members is impracticable. More than 20,000 families reside in CHA-owned public housing properties, and all of them are entitled to have a lawful and

22

effective hardship exemption policy and procedure in place should they experience financial hardship. In each fiscal year from 2019 through 2021, CHA charged more than 1,350 households in public housing the minimum rent. Ex. C, FY 2019 Annual Report, at 43; Ex. D, FY 2020 Annual Report, at 40; Ex. E, FY 2021 Annual Report, at 35. The putative class members are unlikely to pursue their claims individually because they all have limited incomes and the value of their individual claims is relatively low.

125. **Commonality**. Common questions of fact and law presented by this case include:

    a. Whether CHA's "only on request" policy violates the federal mandate to immediately grant financial hardship suspensions and exemptions from the minimum rent when the facts warranting such exemptions are known to CHA, *see* 42 U.S.C. § 1437a(a)(3)(B);

    b. Whether CHA violates the Housing Act by failing to effectively inform public housing residents of their right to request hardship exemptions to the minimum rent requirement or the procedures for exercising that right;

    c. Whether due process requires CHA to actively inform its residents about the right to request hardship exemptions to the minimum rent requirement in a meaningful and timely manner;

    d. Whether CHA violated its residents' right to due process by failing to take steps that were reasonably calculated to inform them in a

meaningful and timely manner of their right to request hardship exemptions to the minimum rent requirement;

e. Whether CHA has a policy or practice of terminating the leases of, and pursuing eviction actions against, tenants who fail to pay the $75 minimum rent, in violation of 42 U.S.C. § 1437a(a)(3)(B); and

f. Whether CHA breached its public housing lease with class members by determining rent amounts in violation of HUD regulations.

126. **Typicality and Adequacy**. The named Plaintiffs' claims are typical of those of the class as a whole. All of the named Plaintiffs' claims arise from the same CHA policies and practices. The named Plaintiffs do not present claims that are unique to themselves. Instead, they bring claims typical to the class members. Plaintiff class representatives and class counsel will fairly and adequately protect the interests of the class as a whole. Named Plaintiffs do not have any interests that conflict with those of other class members. By filing this action, Plaintiffs have expressed an interest in vindicating their rights, as well as the rights of all those similarly situated. Plaintiffs are represented by experienced counsel.

127. **Injunctive and Declaratory Relief**. CHA has acted or refused to act on grounds that apply generally to the Rule 23(b)(2) class as a whole, and CHA's unlawful policy is uniformly applied to the class as a whole, so that final injunctive or declaratory relief is appropriate respecting the class as a whole.

128. Without the issuance of injunctive relief, CHA will continue to financially benefit. Without the issuance of injunctive relief, tenants will continue to be forced to pay or owe overdue rent they were not required to pay, or they will be evicted.

129. **Predominance.** Common questions of law or fact predominate over any questions affecting only individual members. There are several key common questions in this litigation, including whether CHA violated its residents' rights to due process by failing to take steps that were reasonably calculated to inform them of their right to request hardship exemptions to the minimum rent; whether CHA's "only on request" policy violates the Housing Act, *see* 42 U.S.C. § 1437a(a)(3)(B); whether CHA violates the Housing Act by failing to effectively inform its residents of their right to request hardship exemptions or the procedures for exercising that right; and whether CHA breached its public housing lease with class members by determining rent amounts in violation of HUD regulations. These common issues predominate over individualized questions such as the individual circumstances of each putative class member and the timing of their eligibility for any exemption to the minimum rent, making certification under Rule 23(b)(3) appropriate.

130. **Superiority.** A class action is superior to other avenues to resolve claims of the putative class. The nature of this action and the wide-reaching impact of CHA's policies on the putative class, combined with the relative

lack of resources available to the class to protect its rights, make the use of the class action device particularly efficient and appropriate to afford relief to Plaintiffs and the putative class for the wrongs committed by CHA.

131. Proof of a common course of conduct and the uniform application of an unlawful policy to the Plaintiffs applies equally to the putative class, whereas individualized actions would create the risk of inconsistent results and would be unnecessary and duplicative of this litigation.

132. Litigation of the simple and straightforward claims in this action are easily and readily manageable with the class device. CHA's uniform policy and conduct and its violation of the statutory provisions it is required to follow are straightforward issues suitable for class resolution. Moreover, class membership can easily be ascertained and identified through CHA records for purposes of issuing notice to class members.

133. Additionally, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues for which issues-only classes should be certified include, but are not limited to:

    a. Whether CHA owed a legal duty to Plaintiffs and the putative class to automatically provide hardship exemptions to qualifying tenants;

b. Whether CHA breached its legal duty to Plaintiffs and the putative class by failing to automatically provide hardship exemptions to qualifying tenants;

c. Whether CHA's "only on request" policy violates federal law;

d. Whether CHA adequately notified tenants of the "only on request" policy; and

e. Whether CHA breached its public housing lease with class members by determining rent amounts in violation of HUD regulations.

**LEGAL CLAIMS**

**COUNT I– 42 U.S.C. § 1983**

**VIOLATION OF THE UNITED STATES HOUSING ACT**

134. Plaintiffs reallege paragraphs 1-133 of this Complaint and incorporate them herein.

135. CHA is a "person" within the meaning of 42 U.S.C. § 1983.

136. Acting under color of state law and through its policies and customs, Defendant has violated, and continues to violate, the Plaintiffs' rights secured by 42 U.S.C. § 1437a(a)(3), which is actionable pursuant to 42 U.S.C. § 1983, by (1) adopting and maintaining the "only on request" policy and thus failing to immediately grant hardship suspensions or exemptions when the facts warranting mandatory hardship suspensions or exemptions are known to CHA; (2) depriving public housing residents of meaningful and timely notice of their right to request a hardship exemption to the

minimum rent requirement; and (3) pursuing eviction actions against residents for nonpayment of the minimum rent.

137. As a result of Defendant's actions, Plaintiffs and the class members they seek to represent have been injured and suffer continuing injuries.

### COUNT II– 42 U.S.C. § 1983

### VIOLATION OF THE DUE PROCESS CLAUSE

138. Plaintiffs reallege paragraphs 1-133 of this Complaint and incorporate them herein.

139. CHA is a "person" within the meaning of 42 U.S.C. § 1983.

140. The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law …." U.S. Const. amend. XIV, § 1.

141. Plaintiffs and class members have property rights in their leasehold interests, and in a system that produces a fair determination of their rent in times of financial hardship. As established by the Housing Act and its implementing regulations, 42 U.S.C. § 1437a(a)(3), 24 C.F.R. § 5.630, Plaintiffs have a legitimate claim of entitlement to consideration for a hardship exemption to the minimum rent requirement.

142. Acting under color of state law, Defendant deprived Plaintiffs of these rights without proper notice and a right to be heard. Specifically, Defendant deprived Plaintiffs and class members of their right to a fair determination of their eligibility for a hardship exemption by failing to notify them in a meaningful and timely manner of their right to request

28

such an exemption, and by failing to maintain a system of rent calculation that fairly and lawfully determines rent in times of financial hardship.

143. Defendant's actions have violated and continue to violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

144. The deprivations of Plaintiffs' rights are a consequence of Defendant's systemic policies, customs, and practices.

## COUNT III
### STATE LAW BREACH OF CONTRACT CLAIM

145. Plaintiffs reallege paragraphs 1-133 of this Complaint and incorporate them herein.

146. Plaintiffs' and the putative class members' lease agreements are valid and enforceable contracts.

147. At all times relevant to this Complaint, Plaintiffs and the putative class members materially performed their obligations under their leases with CHA.

148. Defendant CHA breached its duties under its respective leases with each putative class member in that, since at least 2012, CHA failed to charge rent in an amount that is in accordance with applicable federal implementing regulations for the United States Housing Act as required by its lease. Ex. A, Public Housing Lease Agreement at p. 5, § 1, ¶ (b).

149. CHA's breach of its duties under its respective leases has injured Plaintiffs and the putative class members by depriving them of hardship

exemptions to which they are entitled and causing them financial and other harms.

## **RELIEF REQUESTED**

Plaintiffs respectfully request that this Court:

a.  Declare that Defendant's "only on request" policy, and its acts and omissions, as set forth above, violate the United States Housing Act of 1937, 42 U.S.C. § 1437a(a)(3)(b), and its implementing regulations;

b.  Declare that Defendant's acts and omissions, as set forth above, violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

c.  Declare that Defendant has breached its duties under its respective leases with class members;

d.  Enter a preliminary and permanent injunction, without bond (or upon a nominal bond), enjoining Defendant from continuing to have in place its "only on request" policy, from failing to suspend or grant an exemption from the minimum rent when it knows of circumstances justifying the suspension or exemption, and from requiring any public housing resident to pay the minimum rent without first providing that resident with adequate and timely notice of the right to request, and the procedure for requesting, a hardship exemption to the minimum rent requirement;

e.  Enter a preliminary and permanent injunction, without bond (or upon a nominal bond), enjoining Defendant from terminating any public housing

30

resident's lease agreement for nonpayment of the minimum rent and requiring Defendant to withdraw any pending eviction actions and associated terminations of assistance based on nonpayment of the minimum rent;

f. Enter an order requiring Defendant to recalculate the rent of every CHA public housing resident charged the minimum rent and to (1) refund or otherwise credit to the class members the difference between the minimum rent and the lesser rent they owed under such recalculation for every month until such time as the Defendant has in place policies and procedures that conform to the law, as well as prejudgment interest and (2) file satisfactions of any money judgments awarded in eviction actions based on nonpayment of rent the tenants did not owe under such recalculation;

g. Enter an order requiring Defendant to pay Plaintiffs' reasonable costs and attorneys' fees for the prosecution of this action;

h. Certify the Rule 23(b)(2) class defined above and appoint the undersigned attorneys as class counsel;

i. Certify the Rule 23(b)(3) class defined above and appoint the undersigned attorneys as class counsel;

j. Alternatively, certify the Rule 23(c)(4) issues classes as defined above and appoint the undersigned attorneys as class counsel; and

k. Grant such other relief as may be proper and just.


DATED: July 21, 2022

By:   /s/ Daniel R. Campbell
      One of the Attorneys for Plaintiffs

Jeffrey E. Stone
Daniel R. Campbell
Michael W. Weaver
Emilie O'Toole
Dawn Peacock
MCDERMOTT WILL & EMERY
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
jstone@mwe.com
dcampbell@mwe.com
eotoole@mwe.com
dpeacock@mwe.com
mweaver@mwe.com
(312) 984 2167

John Bouman
Lawrence Wood
Daniel Schneider
LEGAL ACTION CHICAGO
120 South LaSalle Street, 9th Floor
Chicago, Illinois 60603
jbouman@legalactionchicago.org
lwood@legalactionchicago.org
dschneider@legalactionchicago.org
(312) 347 8330

Kate Walz
Marcos Segura
NATIONAL HOUSING LAW PROJECT
1663 Mission St. Suite 460
San Francisco, California 94103
kwalz@nhlp.org
msegura@nhlp.org
(415) 546 7000 ext. 3129

Attorneys for Plaintiffs