UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSETTE OLIVER, KEONA MONTGOMERY, and TARYN TRAVIS, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CHICAGO HOUSING AUTHORITY, an Illinois municipal corporation, <br><br> Defendant. | Case No. 22-cv-3786 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNCONTESTED MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT; DESIGNATION OF CLASS REPRESENTATIVES AND APPOINTMENT OF PLAINTIFFS' COUNSEL; AND APPROVAL OF CLASS SETTLEMENT NOTICE**

Plaintiffs Josette Oliver, Keona Montgomery, and Taryn Travis ("Plaintiffs" or "Named Plaintiffs"), have negotiated a proposed settlement ("Settlement") that provides substantial benefits to a class of current and former Chicago Housing Authority ("CHA") public housing residents. Plaintiffs, by and through the undersigned Class Counsel, seek an order (a copy of which is attached to this memorandum): (1) preliminarily approving the proposed class-wide Settlement Agreement, attached hereto as Exhibit 1, under Federal Rule of Civil Procedure 23(e); (2) preliminarily certifying the proposed Class for settlement purposes only under Rule 23(b)(2) and (b)(3); (3) designating Plaintiffs as Class Representatives and their attorneys as Class Counsel; (4) approving the form and manner of class notice; and, (5) setting a date for a final fairness and approval hearing of the Settlement and the application for attorneys' fees and expenses.

**I.      BACKGROUND**

     **A.      Nature of Plaintiffs' Claims**

1

CHA administers the federally-funded public housing program in Chicago. Pursuant to the Housing Act, CHA charges public housing residents a rent based on the resident's income or a standard minimum rental amount, whichever is higher. *See* 42 U.S.C. § 1437a(a). Since 2008, CHA, with the approval of the U.S. Department of Housing and Urban Development, has set the minimum rent for its residents at $75 per month, meaning that a presumptive rent "floor" of $75 applies to the lowest-income public housing residents. *See* Chicago Housing Authority, FY2009 Moving to Work Annual Plan, 101 (Oct. 23, 2008), https://www.hud.gov/sites/documents/DOC_10284.pdf.

Although federal law authorizes CHA to charge residents the minimum rent, the Housing Act creates mandatory exemptions from the minimum rent for tenants who are experiencing financial hardship. *See* 42 U.S.C. § 1437a(a)(3)(B). Specifically, federal law mandates that public housing authorities "shall immediately grant an exemption" from the minimum rent to "any family" that is unable to pay that rent because of "financial hardship." 42 U.S.C. § 1437a(a)(3)(B)(i). The Housing Act sets forth a non-exhaustive list of circumstances that qualify families for a hardship exemption (e.g., when a loss of employment decreases household income, or when a family would be evicted for nonpayment of the minimum rent). *Id.* The hardship exemption rules are codified at 24 C.F.R. §§ 5.628(a), 5.630. CHA's public housing lease states that "[t]he rent amount shall be determined by the CHA in compliance with [HUD] regulations …." Ex. 2, Chicago Housing Authority, FY2020 Residential Lease Agreement at p. 5, §1, ¶ (b).

Plaintiffs allege that CHA violated their rights under the Due Process Clause of the Fourteenth Amendment and the Housing Act and breached their residential leases by allegedly (1) maintaining a policy and practice of granting hardship exemptions to the minimum rent only when tenants formally request these exemptions, even when the facts warranting mandatory hardship

exemptions may be known to CHA; (2) depriving public housing residents of meaningful and timely notice of their right to request a hardship exemption; (3) failing to maintain a system of rent calculation that fairly and lawfully determines rent in times of financial hardship; (4) pursuing evictions for nonpayment of the minimum rent; and (5) failing to charge rent in accordance with applicable federal regulations as required by CHA's lease. Compl. ¶¶ 134-149, ECF No. 1.

**B.  Procedural Background**

On May 17, 2021, Plaintiffs notified CHA that they were prepared to file suit to challenge CHA's implementation of minimum rent hardship exemptions. Ex. 3, Decl. of John Bouman ¶ 3 ("Bouman Decl."). Over the next nine months, the parties met repeatedly in an effort to resolve the case. The parties participated in seven settlement negotiations either in person or by teleconference and also exchanged numerous written communications addressing their positions. *Id.* ¶ 4. On February 11, 2022, the parties reached an agreement in principle. CHA agreed to modify its hardship exemption procedures and to provide relief to Class Members in the form of arrearage reductions and rent credits. *Id.* ¶ 5. Over the next five months, the parties discussed remaining issues, including the settlement implementation timeline and the details of CHA's new procedures. *Id.* ¶ 6. In evaluating the reasonableness of CHA's proposal, Plaintiffs considered the settlement reached in a similar suit against the Housing Authority of the City of New Haven. *Id.* ¶ 7.

On July 21, 2022, Plaintiffs filed suit, on behalf of themselves and others similarly situated, alleging that CHA's implementation of the hardship exemption violated their rights under the U.S. Housing Act and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and breached their residential leases. Compl. ¶¶ 134-149. Plaintiffs now move for preliminary approval of the proposed class action settlement attached as Exhibit 1.

**C.  The Terms of the Parties' Agreement and Class Members' Benefits, Attorneys' Fees and Service Awards**

3

The parties' proposed Settlement contemplates that the Court will certify the following Settlement Class:

> All current residents of CHA-owned, operated, or controlled public housing units, and all former residents of CHA-owned, operated, or controlled public housing units who resided in those units at any point since July 13, 2016, whose rent is now, has been, or will be set at the federally-authorized minimum rent.

Ex. 1, § II.1. Excluded from the class are (1) individuals who validly opt out of the Settlement, (2) counsel of record (and their respective law firms), and (3) the Judge to whom this litigation is assigned, any member of the Judge's staff, and any member of the Judge's immediate family.

The Settlement broadly provides two types of relief: (1) changes to CHA's minimum rent procedures, and (2) monetary relief in the form of arrearage reductions and rent credits.

First, the Settlement requires CHA to implement a series of procedural changes regarding its administration of the minimum rent. Among other changes, CHA will not require a request for a hardship exemption to be made "formally" or using particular language. Ex. 1, § IV.2. CHA will provide residents with a plain language instruction sheet regarding hardship exemptions to the minimum rent at numerous junctures during their tenancies, including whenever a resident receives a notice of rent adjustment that states the resident is subject to the minimum rent and whenever the tenant directly provides their property manager with information establishing that they may be entitled to a hardship exemption because of a qualifying circumstance identified in 42 U.S.C. § 1437a(a)(3)(B)(i). Ex. 1, § IV.3(b). Tenants facing eviction for an amount that includes minimum rent charges will be notified of their right to request a hardship exemption, and CHA will promptly determine if these residents are entitled to a retroactive hardship exemption for any or all of the months at issue. Ex. 1, § IV.4. CHA will memorialize its new procedures and train staff and property managers on its hardship exemption policies and practices. Ex. 1, § IV.5-6.

Second, the Settlement provides monetary relief to Class Members in the form of arrearage

4

reductions and rent credits. For all Class Members who do not timely exclude themselves from the Class, CHA will remove from the Class Member's rent ledger all unpaid minimum rent charges that have accrued from July 13, 2016 through the Settlement Agreement Execution Date. Ex. 1, § IV.8. Class Members will not have to request a hardship exemption or return a claim form to receive this relief. *Id*. CHA also will award Class Members rent credits—which may be offset against existing amounts owed to CHA for unpaid back rent, as well as current or future rent—for any minimum rent payments the Class Members made from April 13, 2020 through the Settlement Agreement Execution Date. Ex. 1, § IV.9. CHA will have the option to conduct individualized assessments to determine which Class Members are entitled to receive rent credits, but CHA will not demand any additional request from a Class Member to initiate any such individualized assessment. Ex. 1, § IV.9(b). Additionally, CHA will identify certain Class Members who were evicted for nonpayment of an amount including minimum rent and will take steps to remove unpaid minimum rent charges from their ledgers and to report such removal to any third-party to whom CHA may have reported the debt. Ex. 1, § IV.10.

Pursuant to the Settlement and if approved by this Court, CHA will pay $75,000 to Class Counsel for attorneys' fees and litigation expenses and, as a service award for the Named Plaintiffs, will erase all unpaid minimum rent charges that have accrued throughout the Named Plaintiffs' tenancies with CHA and provide credits for minimum rent payments the Named Plaintiffs made during their tenancies. Ex. 1, §§ IV.11, 13.

### D. Exclusion and Objection Rights

Settlement Class Members may exclude themselves from the Settlement Class by sending a written request for exclusion pursuant to the procedure included in the Class Notice (attached as Exhibit F to the Settlement). Class Members who opt out will be excluded from the Settlement's

rights and benefits but will not be bound by it. Class Members instead may send a timely written objection to the Court and counsel. The Parties request an objection deadline twenty-one days before the Final Approval Hearing. Class Counsel will file a motion for final approval before the Final Approval Hearing. Except for those Class Members who timely and properly exclude themselves, all Class Members will be bound by the final approval order, the judgment, and the release set forth in the proposed Settlement.

## II. ARGUMENT

### A. The Proposed Settlement Should Be Preliminarily Approved, and Notice of Its Terms Provided to the Class.

Settlement approval and settlement class certification can usually be combined. Manual For Complex Litigation § 21.632 at 321 (4th Ed. 2004). Courts analyze certification and whether the proposed settlement is "within the range of possible approval." *In re: Nat'l Collegiate Athletic Assn Student-Athlete Concussion Injury Litig.*, ("*NCAA Concussion Litig.*"), 314 F.R.D. 580, 588 (N.D. Ill. 2016). The court must direct notice if "justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). At this initial stage, Plaintiffs need show only that final approval is likely, not certain. *Burnett v. Conseco Life Ins. Co.*, 2020 U.S. Dist. LEXIS 129282, *10 (S.D. Ind. 2020). If this standard is met, then the court orders notice sent to class members so they can object. *NCAA Concussion Litig.*, at 588 (citing Fed. R. Civ. P. 23(e)(1)). Then "the court conducts a final approval hearing to determine whether the settlement is 'fair, reasonable, and adequate.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(2)). Preliminary approval is warranted here because the Settlement is fair, reasonable, and adequate; the proposed Settlement Class satisfies the Rule 23(a), (b)(2), and (b)(3) criteria; and the proposed form and manner of notice are appropriate and satisfy due process.

1. **Preliminary Approval of the Settlement Is Appropriate Because the Settlement Terms Are Fair, Reasonable, and Adequate.**

In determining whether approval of a settlement is "likely," Fed. R. Civ. P. 23(e)(1)(B), this Court considers whether (1) class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the settlement provides adequate relief, taking into account the costs associated with continued litigation, the effectiveness of any proposed method of distributing relief, the terms of any proposed attorneys' fees award, and any agreement identified under Rule 23(e)(3); and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2); *see also In re AT & T Mobility Wireless Data Servs. Sales Litig.* ("*AT & T Litig.*"), 270 F.R.D. 330, 346 (N.D. Ill. 2010) (similar factors).

    a. **The Settlement Is the Product of Serious, Informed, Non-collusive, Arm's-Length Negotiations Conducted by Experienced Counsel.**

This case has been the subject of aggressive and effective negotiations by the parties, as set forth in detail in Section I.B, *supra.* In addition to numerous telephone calls and email communications, the parties met in person or by teleconference seven times and exchanged more than a dozen written proposals. Plaintiffs have been vigorously represented in these discussions by the National Housing Law Project, Legal Action Chicago, and McDermott, Will, & Emery LLP (representing the class *pro bono*). Co-counsel have significant experience in complex civil federal litigation, federal class action litigation and housing law. *See* Bouman Decl. ¶¶ 8-9. Defendant is represented by experienced outside counsel at Saul Ewing Arnstein & Lehr LLP. There can be no dispute that the negotiations were serious, informed, and non-collusive.

    b. **The Settlement Fairly and Adequately Addresses the Concerns Underlying the Litigation.**

Plaintiffs brought this suit to remedy alleged deficiencies in CHA's administration of minimum rent hardship exemptions. The Settlement fairly and adequately addresses Plaintiffs'

7

...

concerns, provides significant relief to the Class, and disposes of all claims filed against CHA.

Without admitting or conceding liability, or any claims or defenses, CHA has agreed to significant procedural changes regarding its administration of the minimum rent. These include changes regarding what qualifies as a hardship "request," Ex. 1, § IV.2, when and how residents will receive notice of the availability of and process for requesting hardship exemptions, Ex. 1, § IV.3, and how CHA will process hardship requests from tenants who face eviction for an amount that includes minimum rent, Ex. 1, § IV.4. Additionally, CHA has agreed to eliminate all minimum rent arrearages for Class Members that accrued from July 13, 2016 and continuing until and including the Settlement Agreement Execution Date, Ex. 1, § IV.8, including for certain evicted past residents, Ex. 1, § IV.10. CHA will also provide rent credits to qualifying Class Members who made past minimum rent payments. Ex. 1, § IV.9. The Settlement provides significant relief to the Class without any formal claims process; instead, CHA will automatically remove unpaid minimum rent arrearages from Class Members' ledgers and, at CHA's option, will initiate individualized assessments to determine all Class Members' entitlement to rent credits.

    **c. The Settlement Is Reasonable in Light of Litigation Risks and Other Factors.**

This settlement provides immediate and significant benefits to the Class Members, without the delay of continued litigation. The Settlement also is reasonable considering the risks that each party would face if litigation continued. The parties' positions differ significantly with regard to CHA's duties pursuant to the Housing Act, including whether CHA is required to grant hardship exemptions to the minimum rent in the absence of a formal tenant request. The parties' positions also diverge with regard to the relevant statute of limitations; CHA opposes Plaintiffs' position that the relevant statute of limitations is ten years based on Plaintiffs' claim for breach of a written contract. Given the relative paucity of case law interpreting the hardship exemption provision of the U.S. Housing Act, if the case proceeded to judgment and through appeal, Plaintiffs may have

received nothing or far less than the significant rent relief and procedural changes contained in the Settlement. At the same time, should a court find in favor of Plaintiffs' residential lease claims, the CHA could be facing a substantial monetary judgment.

The Settlement is reasonable given the stage of the proceedings. The Court is not precluded from approving a settlement where, as here, there has been no formal discovery. *See AT & T Litig.*, 270 F.R.D. at 350. Plaintiffs secured relevant information through FOIA requests, and the primary focus of this litigation is on legal, rather than factual, issues. Through more than nine months of negotiations, the parties have developed a strong understanding of the relative strengths and weaknesses of their positions. The Settlement is particularly reasonable because this Court has not yet certified a class, creating a risk that Plaintiffs' motion for class certification would be denied. Counsel for both parties agree that the settlement reflects an appropriate compromise that takes into account the relative risks and strengths of each side's position. Settlement on the proposed terms, without further risk, is in the best interests of all Class Members.

      **d.**     **The Agreed-Upon Incentive Awards and Attorney's Fees Are Reasonable and Within The Range Of Possible Approval.**

The inclusion of incentive awards for the Named Plaintiffs is likewise reasonable. In evaluating incentive awards, courts consider factors such as the plaintiff's actions to protect class interests, the degree to which those actions have benefitted the class, the time and effort the plaintiff expended, and the risks the plaintiff faced. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Named Plaintiffs benefitted the class by bringing a suit that will result in significant structural reforms to CHA's minimum rent procedures, as well as relief for Class Members through arrearage removals and rent credits. The Named Plaintiffs provided valuable information to their attorneys so that they could prepare to file suit and negotiate a reasonable settlement and, most significantly, assumed personal risk in threatening to file this case against CHA given the agency's

9

control over their housing. *See Beesley v. Int'l Paper Co.*, 2014 U.S. Dist. LEXIS 12037, *139 (S.D. Ill. 2014) (considering the "substantial risk" plaintiffs assumed). Courts in this Circuit "have awarded incentive fee awards ranging from $5,000 to $25,000." *Daluge v. Cont'l Cas. Co.*, 2018 U.S. Dist. LEXIS 183713, *10 (W.D. Wisc. 2018). Here, the modest relief Plaintiffs seek in the form of arrearage reductions and rent credits is reasonable in light of the benefit Plaintiffs have provided, the effort they have expended, and the personal risks they have undertaken.

The parties' agreement regarding attorneys' fees is likewise fair and reasonable. Under the Settlement, Plaintiffs' Counsel will petition the Court for $75,000 to reimburse their litigation costs and as attorneys' fees, *see* Ex. 1, § IV.13. "In an action to enforce 42 U.S.C. § 1983, 'the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.'" *Baker v. Lindgren*, 856 F.3d 498, 503 (7th Cir. 2017) (quoting 42 U.S.C. § 1988).[1] "[T]he lodestar approach" to calculating a reasonable fee "is best in cases with substantial injunctive . . . components," such as this one. *Harsch v. Eisenberg*, 956 F.2d 651, 663 (7th Cir. 1992) (internal quotation marks omitted). As of July 11, 2022, Plaintiffs' Counsel had worked a total of 975 hours at hourly rates ranging from $150/hour to $1,610/hour depending on the experience of the attorney, amounting to a lodestar of approximately $560,000. Given that the lodestar is well over the $75,000 that Plaintiffs' attorneys are eligible to receive under the Settlement, and given the substantial procedural changes and other relief secured by the Settlement, Plaintiffs' attorneys' fees are reasonable. The Court need not finally decide this issue now; Class Counsel will file a Motion for Approval of Attorneys' Fees, Incentive Awards, and Reimbursement of Expenses along with their Motion for Final Approval of the Settlement.

---

[1] This action involves a state-law breach of contract claim and 42 U.S.C. § 1983 claims. *See* Compl. ¶¶ 134-149.

### 2. Preliminary Certification of the Settlement Classes is Appropriate.

The proposed Settlement Class satisfies the criteria in Rules 23(a), (b)(2), and (b)(3).[2]

#### a. The Requirements of Rule 23(a) Are Satisfied.

The proposed class satisfies each of the four criteria specified in Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a).

##### i. Numerosity

Although "no magic number" applies to the numerosity requirement, "a forty-member class is often regarded as sufficient." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). Plaintiffs' proposed class easily exceeds this standard. CHA currently charges more than 1,000 residents the minimum rent. *See* CHA, FY2022 MTW Annual Plan 39, http://cha-assets.s3.us-east-2.amazonaws.com/s3fs-public/2021-12/CHA%20FY2022%20MTW%20Annual%20Plan%20for%20Submission%20to%20HUD.pdf.

##### ii. Commonality

The proposed settlement class also satisfies the commonality requirement, which requires that there exist a single common question of law or fact "of such a nature that it is capable of class-wide resolution" because "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011). Claims arising from a defendant's standardized conduct often warrant treatment as a class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

Plaintiffs contend that there are several common issues of law and fact in this case: whether CHA's alleged policy of granting hardship exemptions only on request when the facts warranting

---

[2] CHA stipulates, for purposes of settlement only, that a settlement class be preliminarily certified, but reserves any and all defenses to class certification in the event that the Settlement proposed herein is not fully and finally approved.

11

the exemptions may be known to CHA violates 42 U.S.C. § 1437a(a)(3)(B); whether CHA violates the Housing Act and the Due Process Clause by allegedly failing to effectively inform public housing residents of their right to request hardship exemptions and the procedures for exercising that right; whether CHA has, in violation of 42 U.S.C. § 1437a(a)(3)(B), a policy or practice of terminating the leases of, and pursuing eviction actions against, tenants who fail to pay the $75 minimum rent; and whether CHA breached its public housing lease by allegedly determining rent amounts in violation of HUD regulations. The legality of CHA's policies and practices does not turn on circumstances unique to individual class members because CHA applies its uniform policies in the same manner to the class as a whole.

### iii. Typicality

The typicality criterion also is satisfied. This requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596–597 (7th Cir. 1993). To satisfy this standard, the named plaintiffs' claims must arise from the same event, practice, or course of conduct that gives rise to the putative class members' claims and be based on the same legal theory. *Id.* The claims of Named Plaintiffs and those of absent Class Members all arise from CHA alleged failure to grant hardship exemptions in the absence of a formal request and provision of inadequate notice of the availability of hardship exemptions. The claims are also based on the same legal theory: that CHA has violated the Class Members' rights under 42 U.S.C. § 1437a(a)(3)(B), the Due Process Clause, and CHA's lease agreement.

### iv. Adequacy

Finally, the court must inquire into "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of

the class members." *Retired Chicago Police Ass'n*, 7 F.3d at 598 (quotation marks omitted); *see also Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1027 (7th Cir. 2018) (named plaintiff must belong to the putative class and "have the same interest and injury as other members"). Here, the Named Plaintiffs have no interests antagonistic to the proposed Class Members and seek to secure for all Class Members the statutory and contractual protections to which they are entitled, and Plaintiffs' attorneys are experienced and accomplished in class litigation. Bouman Decl. ¶¶ 8-9.

### b. The Class Meets the Requirements of Rule 23(b)(2) and 23(b)(3) for Purposes of Settlement.

In addition to satisfying Rule 23(a) requirements, a class must meet the criteria for either Fed. R. Civ. P. 23(b) (1), (2), or (3). *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 490 (N.D. Ill. 2015). Plaintiffs request certification based on 23 (b)(2) and (b)(3).[3]

#### i. The Requirements of Rule 23(b)(2) Are Satisfied.

The proposed class qualifies for certification under Rule 23(b)(2). Rule 23(b)(2) permits the creation of a class when "the party opposing the class has acted or refuses to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Colloquially, 23(b)(2) is the appropriate rule to enlist when the plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chicago Teachers Union, Local 1 v. Chicago Board of Education*, 797 F.3d 426, 441 (7th Cir. 2015).

Plaintiffs allege that CHA has acted on grounds generally applicable to each member of the proposed class, in claimed violation of the Housing Act, the U.S. Constitution, and CHA's lease agreement. *See supra* at 11-12. Plaintiffs seek injunctive relief to reform CHA's practices

---

[3] A court may certify a class under both Rule 23(b)(2) and 23(b)(3). *See Bietsch v. Sergeant's Pet Care Prods., Inc.*, No. 15 C 5432, 2016 WL 1011512, at *12 (N.D. Ill. March 15, 2016).

and to afford Class Members an opportunity to receive the benefits of exemptions to which they were entitled. Because Plaintiffs seek to enjoin and declare unlawful CHA's alleged uniform policies and any monetary relief that may flow to Class Members is incidental to the equitable relief requested, the proposed class satisfies Rule 23(b)(2). The Settlement provides ample due process protections by offering notice and an opportunity to opt-out. *See Johnson v. Meriter Health Services Employee Retirement Plan*, 702 F.3d 364, 370-72 (7th Cir. 2012) (affirming Rule 23(b)(2) certification; stating that notice and opt-out are permitted should issues arise related to individual relief); *see also Lightfoot v. Dist. of Columbia*, 2004 U.S. Dist. LEXIS 22158, *24 (D.D.C. 2004).

### ii. The Requirements of Rule 23(b)(3) Are Satisfied.

Certification pursuant to Rule 23(b)(3) is appropriate if questions of law or fact common to class members predominate over questions affecting individual members, and the class action is superior to other ways to resolve the controversy. *See Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012). Common questions must predominate, but need not be answered on the merits in the class' favor. *Chicago Teachers Union*, 797 F.3d at 444. Settlement class certification avoids many superiority issues since it proposes to have no trial. *See Johnson v. GMAC Mortg. Grp., Inc.*, No. 04-CV-2004, 2006 WL 2433474, at * 3 (N.D. Iowa Aug. 21, 2006).

Common questions predominate for this Settlement. There are several key common questions in this litigation, including whether CHA violated its residents' rights to due process by failing to take steps that were reasonably calculated to inform them of their right to request hardship exemptions to the minimum rent. *See also supra* at 11-12 (describing additional common questions). For purposes of Settlement, these common issues predominate over individualized questions such as the individual circumstances of each putative class member and the timing of their eligibility for any exemption to the minimum rent. The Settlement is superior to other avenues

to resolve Class Member's claims because it resolves many claims through a single action. In sum, the proposed Settlement Class satisfies Rule 23(a), (b)(2), and (b)(3) for settlement purposes.

3. **The Proposed Class Notice Is Appropriate And Satisfies Due Process**.

The proposed notice fully complies with the requirements of Due Process and Rule 23. The proposed Class Notice (attached as Exhibit F to the Settlement) is based on the model form recommended by the Federal Judicial Center and informs Class Members of: (a) the claims in this case and the claims that Class Members will forfeit if they participate in the Settlement; (b) the material terms of the proposed Settlement; (c) Class Members' rights under the proposed Settlement; (d) how to obtain relief through the Settlement; (e) the amounts that will be requested in attorney's fees and litigation expenses; and (f) answers to common questions about class actions. Subject to preliminary approval by the Court, CHA will hand-deliver or send the Class Notice to each Class Member by U.S. mail. Defendant also will cause notice of the proposed settlement to be served under the Class Action Fairness Act of 2005. 28 U.S.C. § 1715.

4. **Class Counsels' Appointment Should be Confirmed.**

An order certifying a class action must also appoint class counsel under Rule 23(g). Fed. R. Civ. P. 23(c)(1)(B). Class Counsels' work in this case provides a substantial basis for finding them well-qualified under Rule 23(g) and appointing them as Class Counsel. Bouman Decl. ¶¶ 3-7. In addition, the Named Plaintiffs request that they be appointed as class representatives.

## Conclusion

Because the parties' Settlement Agreement fully comports with the requirements set out in Rules 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, the Court should preliminary approve the agreement and enter the proposed order attached hereto as Exhibit 4.

Respectfully submitted,

| | | |
|---|---|---|
| DATED: July 21, 2022 | BY: | /s/ Daniel R. Campbell |
| | | One of the Attorneys for the Plaintiffs |

Jeffrey Stone
Daniel R. Campbell
Emilie O'Toole
Dawn Peacock
Michael W. Weaver
MCDERMOTT WILL & EMERY
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
jstone@mwe.com
dcampbell@mwe.com
eotoole@mwe.com
dpeacock@mwe.com
mweaver@mwe.com
(312) 984 2167

John Bouman
Lawrence Wood
Daniel Schneider
LEGAL ACTION CHICAGO
120 South LaSalle Street, 9th Floor
Chicago, Illinois 60603
jbouman@legalactionchicago.org
lwood@legalactionchicago.org
dschneider@legalactionchicago.org
(312) 347 8330

Katherine E. Walz
Marcos Segura
NATIONAL HOUSING LAW PROJECT
1663 Mission St. Suite 460
San Francisco, California 94103
kwalz@nhlp.org
msegura@nhlp.org
(415) 546 7000 ext. 3129

Attorneys for Plaintiffs